We will hear argument on the first case, United States v. Wells Fargo. May it please the Court, Jim Sabella for appellants. Through their lending programs, which were created by federal statutes and regulations, Federal Reserve Banks play a key role in the Federal Government's financial and economic policies. In addition, they pay their net profits over to the Treasury, so any fraud against a Federal Reserve Bank not only interferes with government economic and monetary policy, it also directly impacts the Treasury. But are they part of the government? Well, that's the question, and that question is normally resolved. The statute, the False Claims Act, just refers to government, doesn't define it. So that question is usually resolved by looking at the factors that were discussed by the Supreme Court in Rainwater and the McNinch cases. Let me interrupt with one more question. You said they pay their profits to the government. Your opponents say that during the time period at issue, the Federal Reserve Act did not require the Federal Reserve Banks to turn over their surplus net earnings to the U.S. Treasury, and appellants are wrong when they state otherwise. How do you respond to that? I have really several responses. Number one, while the statute at that time may not have required it, the Board of Governors of the Federal Reserve System did, and we cited that in our brief. So it was required for them to do it during the relevant period. The statute was later amended to reflect the reality that the Board of Governors had been requiring this, I think, since the late 1940s. But number two, consider the implications if Ms. Williams is right. If this was voluntary at the time, what private company would voluntarily turn over all of its net profits to the government? I mean, it's inconceivable, but a government entity might well do that. So I would suggest that either way, that argument tilts in our favor. I think an important thing to remember, though, about Rainwater and McNinch is that it's not a checklist. You don't have to win them all. There's no one factor that's dispositive. It's like a mosaic that is considered holistically, and ultimately you've got to make the judgment, is this the kind of case to which the policies of the False Claims Act dictate that the False Claims Act ought to apply? And here it seems to me, since fraud directly interferes with governmental policies, make no mistake, these lending programs would not exist but for the fact that they advance governmental policies. No other reason for these programs to exist. No other reason for the Federal Reserve Banks to exist but to advance the government's interests. Can I ask you, on page 37 of your brief, your opening brief, you say that, or you suggest, I should say, that the FRBs might be part of the government under the FCA for purposes of the loan at issue but not part of the government under the FCA for the purposes of the dispute between the FRB of Cleveland and a third-party service provider. So are you saying that it's possible for the FRBs to be part of the government sometimes, not other times? Yeah, I mean, we don't have to go that far, obviously, in this case, because I think there's special reasons why the False Claims Act and they are the government for purposes of these lending programs, which are created and controlled by the Federal Government. If you're asking me, do I think the False Claims Act always should apply, I mean, my answer would be yes, but we don't have to go there. And I guess, hypothetically, I haven't really thought about it too much, I guess you could consider a situation where the False Claims Act policies were so remote that one decided it wasn't a government entity for the purpose of that particular event or transaction. I think it's possible, but I don't think the Court has to address that. So on your agency argument, if we were to have a different view from you as to whether the Federal Reserve banks are part of the government, how do you square Fox News, which held that the FRBs did not lend to member banks on behalf of the Board or under delegated authority of the Board? Well, I'm not really sure what on behalf of means in that context, but I don't think it's the same thing as agency. I mean, agency talks about elements of control. And here you have the Board of Governors specifying the interest rates, the eligibility requirements, and things like that, plus designating the chairman, the deputy chairman, approving the president. So you have a strong element of control, which I think is the key mark of an agency relationship. I don't think that's necessarily the same as or different from on behalf of in the Fox News situation, which, after all, was construing, I think it was the requirement that they were the custodian for FOIA purposes, custodian of records, if the Federal Reserve Bank was acting on behalf of the Board of Governors. I mean, I just don't think it's necessarily the same test. When we look at the appointment structure and we see that at least some members of the Boards of the local banks are basically chosen by the local banks, how does that square with the idea that they are part of the government? Okay, well, you have nine directors. Three of them are chosen by the Board of Governors, and the chairman and deputy chairman have to come from those. So the head honchos are clearly designated by the Board of Governors. Then you have three that are designated by the commercial banks but have to serve the public interest, do not serve the interests of the commercial banks. They have to serve the public interest. And all six of the directors in those two categories that I mentioned cannot be officers and directors of any commercial banks. Then you only have three directors designated by the commercial banks who do in fact serve the wishes, if you will, of the commercial banks. And the president has to come from the public interest directors, and the president has to be approved by the Board of Governors. And the Board of Governors can remove any directors and officers. So while it's certainly a hybrid situation, if you're weighing is that more government or more private, I would argue, Your Honor, that it's more government. What's your best argument, or rather I should say specifically, what's the best site for your position that the defendant's underpayment of interest to the FRB has reduced an obligation to pay or transmit money to the government within the meaning of 31 U.S.C. Section 3729A.7? Well, I think the position is that the Federal Reserve Banks have an obligation to turn over profits to the government. So that's the obligation to pay money to the Treasury or to pay the government. To the extent that Wells Fargo paid too little interest because, for example, they borrowed at the primary window and they should have been paying more interest at the secondary window, they decreased the amount of money that the Federal Reserve Banks had available to pay over to the Treasury. And therefore, they decreased the obligation of the Federal Reserve Bank to turn money over. I mean, that's the argument. Okay. How is it that, is this case, does it raise a novel or unsettled question in our circuit? What is your view of the law of this circuit on the question presented? The Second Circuit, the Court of Appeals, has really not addressed this issue at all. The reason I ask is sort of perhaps the obvious one. This is the financial center of the United States. The Federal Reserve Bank of New York is famously at the center of the whole system. It just strikes me as eccentric or odd that this issue has not come up before. Well, I mean, I suppose one argument might be that other defense lawyers didn't think it was very good, so they didn't raise it. But I don't want to cast aspersions on Ms. Williams here. So I think she's more creative than most, and I'll leave it at that. So, I mean, in this circuit, we have— Have they not, that they are instrumentalities of the government, the Federal Reserve? Yes, I believe that's correct. I believe that's correct. And we do, of course, have, in addition to Judge Kogan's decision here, we have Judge Rakoff in the case we cite in our briefs, where he believes Judge Kogan is wrong and he goes the other way. I guess I'm on read, so I should probably sit down. And we could always hear—additionally, we could always solicit a brief if we wanted to pursue this further from the Federal Reserve. I guess—I assume the Court could if that were necessary, although I think the Federal Reserve, if it really wanted to be heard, had plenty of opportunity to be heard in this case and chose not to. How is it that they haven't surfaced here? Well, you can't really draw any inferences— Amicus, shall we say? Yeah, you can't really draw any inferences from non-intervention or non-amicus. I mean, maybe they just have other things to do or who knows. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Amy Williams with the firm of Troutman Sanders on behalf of the appellees. The reserve banks here were using their direct authority granted by Congress to lend private funds to their member banks. When you say private funds, let's be realistic. These are not private, private funds. If we look at the whole legislative scheme since 1913, what we see is a scheme that is essentially governmental. If you look at the legislative—you peg much of your analysis on the legislative history of 1913, and I can understand that. But if you look at a multitude of legislative enactments and regulatory schemes since 1913, you have a move from the hybrid public-private central bank to something that is far more akin to a public bank. You've got the Gold Reserve Act of 1934, which transferred title to all gold in the possession of FRBs to the Treasury, empowered the board to determine the supply of Federal Reserve notes issued by FRBs, empowered the Treasury to demonetize gold. You have the Banking Act of 1935, which Senator Stegall described as, and I quote, written into law the principle that the government, the sovereign people of the United States, shall have control of the board and dictate the vast powers of the Federal Reserve System. And that act also, as you may recall, essentially demoted the heads of the FRBs subjected to selection, to approval by the board, and created the FOMC. You have the Federal Reserve Reform Act of 1977, which codified the dual mandate and subjected FRB directors, officers, and employees to the provisions of Title 17. You have the Monetary Control Act of 1980, which required the FRBs to offer their services to all chartered banks, required the board to annually reduce the FRB operating budgets in line with the amount of service they provided, and required the board to transfer all of their savings to the United States Treasury. When the Federal Reserve was created in 1913, the banks, the world's major central banks, were privately owned. That's not true today. It's a different world. So when you talk about private funds and private money, I think you have to explain to me how all of what I've just said, in terms of all of these acts, should be disregarded. Your Honor, because what hasn't changed are the central tenets and the most important provisions of the Federal Reserve Act itself. And there have been efforts, we mentioned them on page 7 of our brief, to bring Federal Reserve banks into the government, and Congress rejected those efforts. And, you know, we lay out the particulars in our bank, but Federal Reserve banks remain owned by bank stockholders. Their employees are not employees or officers of the United States government. The money that Federal Reserve banks, they're privately capitalized, and they raise money through their private market activities and acting as that banker's bank. None of that has changed. They do not have rulemaking authority, so they remain outside of the government. If the Board of Governors levies assessments on the FRBs under Section 244 of Title 12, it says expressly, those shall not be construed to be government funds or appropriations. And thinking specifically about the discount window, Congress gave the power directly under 347, 347B, for Federal Reserve banks to lend to their member banks. Reg A gives the Federal Reserve banks the discretion. That's in contrast to some of the other government. Would you agree, though, that the Federal Reserve banks do turn over their surplus net earnings annually and have during the period in question here? You wrote otherwise. You heard my question about that, but the answer was that the Board of Governors regulations during some part of the relevant period required that turnover, even if the Act itself didn't. Is that incorrect? Your Honor, my understanding is the Board would on an annual basis during our time period, 07 to 09, and many other years, the Board would on an annual basis decide to turn over the surplus. But that happened consistently during this period? My understanding is that it did, Your Honor. Did it not happen? They were required to. It's not simply a voluntary action. We will do this out of the goodness of our heart. The Board, in the years at issue in our case, the Board, not Congress, voted to turn the surplus over. But if I could make two follow-on points about that turnover. Doesn't the Board act pursuant to some sort of legislative scheme? In that instance, no. In that specific instance, I'm not aware that there was any statute. That's the point. At the time, Congress did not require the Board to collect the excess funds from the banks and turn them over to the Treasury. That's the point. There was a statutory change after the time period. In the purpose of this source, was there ever a time in which that did not occur? Yes. If I could finish answering your question, I'm not aware of a year in which that did not happen. But I'd like to make two points about that. First, the turnover of those surplus funds does not transform these discount window loans, which were not made with Treasury funds, and there's no dispute about that in this case. It does not transform those loans into claims in and of itself. Second, Judge Kogan and the District Court in Ohio, I think, correctly ruled that that fact in and of itself does not take the entire rainwater analysis and the structure of the Federal Reserve Act. If we look at the rainwater factors in respect to the Federal Reserve Act, the single fact of the surplus being turned over doesn't turn the Federal Reserve Banks into the government under rainwater. If we look at any public corporation that turns its surplus net earnings over to the government? No, Your Honor, I can't. But I can say that a number of the other supervisory provisions that the appellants rely on to try to paint the Federal Reserve Bank as part of the government are no different from oversight that heavily regulated private interests. What about 12 U.S.C. Section 248.8? In that section, Congress requires the Board to require the FRBs to transfer operational savings to the U.S. Treasury, correct? Your Honor, I think that the provision that I'm thinking of is 289. Answer my question. Your Honor, I can't answer that specific question. I apologize. But what I want to say about 248 in general, and this is the point I was trying to get to. Can I just? You can get to that point. Sure. So you understand my point. I understand your view that 12 U.S.C. Section 289 comes after the allegations in the complaint. But my point is that there are other requirements in place prior to Section 289, and that's why I reference 12 U.S.C. Section 248.8. The point that I can make, and I can't speak to the Court's particular point, and I apologize for that. The point that I can make about the other subsections of 248 is that they are not very different from, for example, the powers that the OCC has over national banks, the powers that insurance regulators have over insurance companies. Those entities, they can examine banks. They can come in and do an on-site examination or audit. They can remove, in extreme circumstances, officers and directors. They can require the writing off of worthless assets. They can suspend charters. And in the case of insurance companies in particular, those state entities often set the rates. They set how things get charged. What we're relying on here is the direct authority to lend and the discretion to decide to lend. The lending decision under Reg A is discretionary with the Reserve Bank, and the fact is that they're doing that with funds that are not taxpayer funds. And so when we ---- You say that. I understand that. But the money, right, who prints the money? So ---- Money is printed by the banks. The money ---- There's something otherworldly about saying that these entities that print money are not part of the government. I'm not saying that. That's my view. I'm just trying to get you to focus on that. If monies had been appropriated by Congress to the banks, you would say that that would be a factor that, in the analysis, that would lead us to think that that would be on the side of saying that there's a governmental instrumentality here. Here, it's not that money has to be appropriated because the banks print the money themselves. I don't think that that's exactly right, and I don't think Judge Brekhoff got it exactly right in his footnote. He doesn't give a cite for making a statement similar to that one, Your Honor. If we look at Sections 411 and 412 of Title 12, the banks apply to the Board of Governors and pledge collateral in exchange for the issuance of notes. There's then a separate contractual arrangement with the Treasury where money is printed. The banks themselves don't actually issue the notes. If you parse through Title 12, I would also make the final point, because I know that I'm over my time, that that is separate from how the Federal Reserve banks fund their activities. They charge like any depository institution. They have a commercial check-clearing operation. They buy and sell commercial paper, and those activities are all clearly private and outside. Does the Court have another question? If the presider would allow me to go forward. If we were to disagree with you about whether this is a claim presented to the U.S. government for purposes of the False Claims Act, this matter has been up and down and up and down and back and forth over a number of years now. Are there other fatal flaws that are evident in the current complaint that you would identify quickly without making an argument about them? Sure, Your Honor, and I would refer you to our papers. We make note of those because I'm going to miss some. Materiality is a significant problem here. We contend there's also a tremendous disconnect between the allegations of the relators and the time period at issue. The facts alleged just don't meet up with the claim that is pled. The discretion under Reg A and the fact that Reg A is, in fact, directed to the reserve banks and not the borrowing banks. And I'm tremendously over my time, but I would refer the Court to where we list those defenses in our papers. If I could beg the Court just for one final sentence, we do think that the Court should be affirmed both on the basis of the False Claims Act, but more importantly, the application of the Rainwater Analysis to the Federal Reserve Act and its congressional pronouncements. I have another question that I might ask. On the reverse false claims matter, if you could help me understand, why couldn't it be that the FRBs themselves have an obligation to deposit money in the Treasury and that your clients would be violating Section 3729A by knowingly decreasing the amount that the FRBs pay? I have two responses to that, Your Honor. The first is in your description of the reserve banks being the entity that has the obligation to the government, which necessarily places them outside the government, right? But obligation is defined as an established duty by the False Claims Act, and while the dollar amount doesn't have to be fixed, the duty has to exist. And this may come back, indeed, to the point of the Board voting every year for the reserve banks to turn their money over versus there being a statute in place. But more importantly, Your Honor, I think really what we're talking about here, in order to allege a reverse false claims act claim against Wachovia or Wells Fargo, they have to have an obligation that they have improperly reduced or avoided, and it has to be a fixed one. And this goes to another problem, I think, with this case, which is it's premised on a hypothetical. The hypothetical is that if Wachovia had been honest with the Federal Reserve Bank, they wouldn't have qualified for primary credit, but they would have sought secondary credit. There was no obligation on Wachovia or Wells Fargo's part to borrow money at a secondary rate. There was no obligation on the part of the Federal Reserve Board to lend at a secondary rate. Therefore, there's no legal obligation, there's no established duty to pay this higher rate of interest that the appellants are seeking. Does that answer the Court's question? Yes, thank you. Thank you very much. What is the mischief here, in your view? That is, what is so terrible as a policy matter? Maybe it's enough to say that under the statutes, this is the government, but why is this an important case? What's the result of all of this? Assuming you don't prevail, what happens? So the policy concern, Your Honor, is that this disrupts the balance that Congress set in place in the Federal Reserve Act. And I will note that the Court had asked earlier, the only time that I'm aware that either the Department of Justice or the Federal Reserve Bank itself has gone on record on this issue was in that older Eastern District of Virginia case, and they both filed briefs saying that the Federal Reserve Bank was not the government for the purposes of the False Claims Act. And so my policy point to the Court would be that finding that there's no claim here does not do terrible violence to the False Claims Act, because we're talking about an entity that's not the government, and we're talking about money that's not the government. But the other ruling could seriously disrupt the very careful congressional allocation of private versus public in the FRA. How so? Because... Or assuming that that's an accurate characterization, with what consequences? It can leave the Federal Reserve Banks open to other obligations that are obligations of the government that the Federal Reserve Bank has resisted over the years, including under FOIA, including under some of the other federal statutes. No, I mean, if you're looking at definition and statute for what the government is, there's not necessarily a one-size-fits-all kind of answer. It depends on what the purpose of the statute and how functioning the statute and so on. Wouldn't you agree that there could be different answers? There could be different answers, Your Honor, but there's no question that a ruling from this Court that the Federal Reserve Banks are part of the United States government would have reverberations well beyond this decision. Thank you. And what are the... I'm sorry to go on on this, but tell me about the reverberations and why we should care. Well, I think the Court should care because the Congress has spoken through the Federal Reserve Act. I'm going to. Yes, no, I understand that. But when we're... You keep saying that and answering Judge Cabranes' question. You say the Reserve Act of 1913. There are all these other acts. Can you give an answer that takes into account these other acts as well? I don't know those other acts as well as the Court does, and they haven't been the subject of briefing in our case, Your Honor. What I'd have to say is that those other acts didn't change this act, and this act is the enabling statute for the system. If I could get back to Judge Cabranes' question, I apologize. If we think about the Federal Tort Claims Act, the Federal Reserve has resisted the application of that, in part because its employees are not federal employees. Section 341 of FRA, which is the corporate power section, states that Federal Reserve banks can hire employees and fire them at will. If those employees are, if the Reserve banks are now considered or an argument is, a bolstered argument is made that now they're part of the government, does that bring the Federal Reserve Bank into additional employment-related regulatory schemes? The, bear with me. I think it's primarily in the Federal Reserve Bank might say, and I certainly can't speak to them, that we're talking about areas in the employment area and other regulations that would hit a federal agency that would not apply to the Reserve banks currently. I wonder if it would be helpful, and your answer is very helpful, whether it seems to me it would be helpful to hear from the Federal Reserve on this, and especially because we don't want to do any harm in whatever we do. At least we should have a sense of what their views are. My understanding is that the advances that were made in this case would have been the Federal Reserve Bank of Richmond and possibly San Francisco, although the appellants might be able to speak better to that based on the record. It's also the Board of Governors in Washington. They would have a view as well. Yes, they may very well have a view as well, and they are, of course, a separate entity from the Reserve banks. So, if there's nothing further, I know I'm well over. Thank you, Your Honors. Thank you. I really just have a couple of points I'm going to hit, if that's all right. To follow up on Your Honor's point about 12 U.S.C. 248A, I think just to sort of put a bow around it, the way that it was actually accomplished by the Board is 12 U.S.C. 414 specifically says that the Federal Reserve banks shall pay a rate of interest on their Federal notes as set by the Board of Governors. So then what the Board of Governors does each year is basically sets a rate of interest on the notes held by the Federal Reserve banks so that all of their net profits go to the Treasury. That's just the mechanics of how it works. Ms. Williams touched briefly on the equity structure, and I wanted to do that in my opening remarks. While technically the commercial banks hold the stock of Federal Reserve banks, that's really equity in name only. They can't sell it. They can't transfer it. They can't pledge it. If the bank gets liquidated, all the residual interest goes to the United States. So, I mean, it's equity, but not really. Ms. Williams made reference to a brief that the Department of Justice filed 20 years ago in that megabyte case in Virginia. I mean, that was a long time ago, and that was really a very different case. I mean, that was a case that didn't really involve any Federal program or policy at all. There was an IT contractor who was selling the bank bogus Microsoft software or something like that. And in the context of that case, it's kind of understandable, perhaps, that Justice felt that that's not really the kind of thing the False Claims Act ought to be involved with. Their brief said that the position they were taking in that case was only under the circumstances of this case. That's a quote from the appendix 1161. And they further stressed that the software that was the subject of the fraud, quote, was for the general use of the bank staff and was not in support of any Federal program, close quote. And that's at page 1166 of the appendix. So I think that was a rather different case. Just to ask you, I mean, isn't it a point to be reckoned with that Congress gave the FRBs and not the Board to determine whether to make discount window loans and, generally speaking, to whom to make these loans? They have flexibility to apply the eligibility requirements that were set by the Board of Governors, right? I mean, if a bank has a Camels rating of 5, they are not allowed to let it go to the primary window, for example. And the interest rates are set by the Board of Governors, determined by the Board of Governors. They can turn down loans. Yes, they can turn down loans. They can evaluate the information that's presented to them, but only within the strictures of the eligibility requirements established by the government. Lastly, I wanted to just address this employment point that came up, and there's a couple of wrinkles here. I mean, one is, Ms. Williams mentioned that, well, if you say that the Federal Reserve Banks are the government, then it's going to impact the employment cases that are brought by employees. And it seems to me that this Court can make a decision that the Federal Reserve Banks are the government for purposes of the False Claims Act without impacting or deciding whether or not the employees have a different set of rights now. We cited in our brief a whole bunch of statutes where various courts have decided. That brings you to the view that they're part of the government for some things, but not for others. Right, right. Like we cited cases under the Sherman Act, the Service Contract Act, the Administrative Procedure Act, and the National Environmental Policy Act, all of which said that they are government agencies for purposes of those statutes. I'm not suggesting that's binding on whether they're part of the government for purposes of the False Claims Act. And if they are, it still doesn't mean they're part of the government for the purpose of the Civil Service Act or what have you. If you were the Federal Reserve, the banks or the board, why would you want to subject yourself to government regulations? They're already subject to government regulations. Right, I know, but why would you want to subject yourself to more government regulation? Well, I guess I don't- Why is it in their- I guess I don't- You would have to make the case that it's in their interest. Well, it's in their interest because- From their point of view in order for them to support. Right, I think the reason it's in their interest is because they don't want people defrauding them. And if this gives another weapon, another powerful tool that says to people, if you defraud the Federal Reserve banks, now you've got another statute that's going to come down on your head, a treble damage statute that can come down on your head. It seems to me that ought to have some deterrent effect, and I would think Federal Reserve banks ought to like that. Thank you. If there's nothing else, I'm prepared to sit down. Thank you both for your excellent arguments.  Thank you, Your Honor.